IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

GRAND CHINA BUFFETT & GRILL, INC., and
QI FENG CHEN,

        Plaintiffs,

v.                //    CIVIL ACTION NO. 1:16CV159
                              (Judge Keeley)

STATE AUTO PROPERTY AND
CASUALTY COMPANY and SCOTT ULLOM,

        Defendants.

## MEMORANDUM OPINION AND ORDER
### DENYING MOTION TO REMAND [DKT. NO. 6]
### AND GRANTING MOTION TO REALIGN [DKT. NO. 10]

During a scheduling conference on September 29, 2016, the Court **DENIED** the plaintiffs' motion to remand (Dkt. No. 6), **GRANTED** State Auto Property and Casualty Company's ("State Auto") motion to realign the purported defendant, Scott Ullom ("Ullom"), as a plaintiff (Dkt. No. 10), bifurcated the case, and scheduled deadlines for dispositive motions on the coverage issues raised in the case. This Memorandum Opinion discusses the reasons for those rulings.

### BACKGROUND

On July 21, 2015, Ullom filed an action in the Circuit Court of Harrison County, West Virginia ("the underlying complaint"), seeking to hold Qi Feng Chen ("Chen"), in his capacity as "Director, Incorporator, and President" of Grand China Buffet & Grill, Inc. ("Grand China"), liable for violations of the West

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 6]**
**AND GRANTING MOTION TO REALIGN [DKT. NO. 10]**

Virginia Human Rights Act ("WVHRA") (Dkt. No. 1-1 at 7). The complaint alleges that Ullom and his friend were evicted from Grand China, a place of public accommodation, by an "oriental looking" individual. Id. at 7-8. That individual, presumed to be the manager, would not allow Ullom to bring his dog into the restaurant, even after Ullom advised him that it was his service dog. Id.

The underlying complaint seeks "a significant amount" of damages under the WVHRA, both to accommodate Ullom and to punish the defendants. Id. at 25. It also seeks damages for emotional distress, embarrassment, humiliation, and compensation. Id. When Chen notified State Auto, Grand China's insurance company, of the lawsuit, the carrier initially provided a defense under reservation of its rights to further investigate the claim. See id. at 8. After deposing Ullom, however, State Auto decided that he had not incurred a "bodily injury" covered under Grand China's policy ("the Subject Policy"), and declined to further defend Grand China and Chen. Id. at 9.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION TO REMAND [DKT. NO. 6]
## AND GRANTING MOTION TO REALIGN [DKT. NO. 10]

As a result of State Auto's decision not to defend, Grand China and Chen[1] filed the instant action against State Auto and Ullom in the Circuit Court of Harrison County on June 17, 2016. See id. at 6. Among others, the complaint seeks the following declarations: 1) "that the Subject Policy does provide them with bodily injury liability coverage for some or all" of Ullom's claims in the underlying complaint; 2) "that the Subject Policy does provide them with personal and advertising injury liability coverage for some or all" of Ullom's claims in the underlying complaint; and 3) that State Auto's reservation of rights was improperly and untimely issued and that State Auto is barred by waiver and estoppel from avoiding coverage obligations, or alternatively, that the reservation of rights is the sole statement of basis for coverage avoidance, and estoppel and waiver prevent State Auto from asserting any other bases for coverage avoidance. Id. at 12-14. In addition to the declaratory claims, the complaint seeks damages for breach of contract, common law bad faith, a Hayseeds claim, and violations of the West Virginia Unfair Trade Practices Act. Id. at 15-21.

---

[1] In the remainder of this order, plaintiffs Grand China and Chen will be referred to collectively as "Grand China."

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 6]**
**AND GRANTING MOTION TO REALIGN [DKT. NO. 10]**

When State Auto removed the case to this Court on July 22, 2016 (Dkt. No. 1), it acknowledged that Ullom was a non-diverse defendant, but asserted he had been fraudulently joined as a defendant in order to defeat diversity. Id. at 2. State Auto now argues that, to the extent Ullom has an interest in Grand China's claims, specifically the declaratory counts, those interests completely align with those of Grand China; thus, Ullom ought to be realigned to reflect this reality. Id.

On July 29, 2016, State Auto answered the complaint, and filed a counterclaim and cross claim for declaratory relief against Grand China and Ullom respectively (Dkt. No. 4). State Auto seeks declarations that Ullom's claims in the underlying complaint are not covered by the Subject Policy, and that it has no duty to defend or indemnify Grand China against the underlying complaint. Id. at 18.

On August 22, 2016, Grand China moved to remand the case to the Circuit Court of Harrison County (Dkt. No. 7). It argues that "[r]emand is appropriate because there is not complete diversity, the removal is not permitted under the removal statutes, realignment is not available in a removed action, and even if it were, the parties should not be realigned." Id. at 1.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 6]**
**AND GRANTING MOTION TO REALIGN [DKT. NO. 10]**

Alternatively, Grand China urges the Court to defer to the state court under the doctrine of abstention. Id.

### STANDARD OF REVIEW

"The district courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states . . . ." 28 U.S.C. § 1332(a). This provision has been consistently interpreted "to require complete diversity of citizenship of each plaintiff from each defendant." Rosmer v. Pfizer Inc., 263 F.3d 110 (4th Cir. 2001) (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806)). In addition, defendants may remove certain other actions to federal court, that is, "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants." 28 U.S.C. § 1441.

Federalism concerns counsel that removal jurisdiction should be strictly construed. Palisades Collections LLC v. Shorts, 552 F.3d 327, 334 (4th Cir. 2008) (citing Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005)). "The burden of establishing federal jurisdiction is placed upon the party seeking the removal." Mulcahey v. Columbia Organic Chems., Inc., 29 F.3d

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 6]**
**AND GRANTING MOTION TO REALIGN [DKT. NO. 10]**

148, 151 (4th Cir. 1994). As this Court has previously observed, "[a]ll doubts about the propriety of removal should be resolved in favor of retaining state court jurisdiction." Vitatoe v. Mylan Pharmaceuticals, Inc., No. 1:08cv85, 2008 WL 3540462, at *2 (N.D.W. Va. Aug. 13, 2008) (citing Hartley v. CSX Transp., Inc., 187 F.3d 422, 425 (4th Cir. 1999)). The Court, however, may look past the pleadings to determine whether jurisdiction is proper. Ryan Envtl., Inc. v. Hess Oil Co., Inc., 718 F. Supp. 2d 719, 722 (N.D.W. Va. 2010); see also City of Indianapolis v. Chase Nat'l Bank of City of N.Y., 314 U.S. 63, 69 (1941) ("It is our duty, as it is that of the lower federal courts, to look beyond the pleadings, and arrange the parties according to their sides in the dispute." (internal quotation omitted)).

## LEGAL ANALYSIS

As discussed below, there is no fraudulent joinder in this case. Nevertheless, the Court concludes that Ullom should be realigned as a plaintiff, and that abstention is not warranted under the facts of this case.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 6]**
**AND GRANTING MOTION TO REALIGN [DKT. NO. 10]**

## I.   Fraudulent Joinder

Although State Auto's notice of removal asserted that Ullom had been fraudulently joined as a defendant in this case (Dkt. No. 1), it did not argue this issue in its briefing. Moreover, during oral argument, counsel for State Auto conceded that any allegations of fraudulent joinder applied only to claims of Grand China unrelated to declaratory relief.[2]

Under the doctrine of fraudulent joinder, a district court may "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). In order to substantiate an allegation of fraudulent joinder, "the removing party must establish either: [t]hat there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional

---

[2] Indeed, as the plaintiffs point out, State Auto frequently files declaratory judgment actions that name both the insured and the tort claimant as defendants (Dkt. No. 7 at 7).

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 6]**
**AND GRANTING MOTION TO REALIGN [DKT. NO. 10]**

facts." <u>Id.</u> at 464 (quoting <u>Marshall v. Manville Sales Corp.</u>, 6 F.3d 229, 232-33 (4th Cir. 1993)).

Here, the West Virginia Declaratory Judgment Act requires that "all persons shall be made parties who have or claim any interest which would be affected" when declaratory relief is sought. W. Va. Code § 55-13-11.[3] The amount of money Ullom may be able to recover should he obtain a judgment on his underlying complaint depends in part on a determination that his alleged injuries are covered by State Auto. Therefore, Ullom was properly joined in this action, and no avenue exists under West Virginia law by which Grand China could have forced him in as a plaintiff. <u>See</u> <u>id.</u> Because Ullom's joinder is not "clearly improper" in this case, the Court "accept[ed] the parties joined on the face of the complaint." <u>Hartley</u>, 187 F.3d at 425.

## II.  Realignment

In the absence of fraudulent joinder, the question becomes whether the Court should realign the parties, as State Auto urges, and retain jurisdiction based on the resulting diversity of the parties. Grand China, however, strongly contends that realignment

---

[3] The language of this provision has remained unchanged since 1941.

should not be used as a method of conferring removal jurisdiction. Alternatively, it argues that Ullom's interests do not necessarily align with its own.

### A.

According to Grand China, because Ullom is a properly joined defendant, removal is improper under the plain language of § 1441(b)(2), commonly known as the forum defendant rule (Dkt. No. 7 at 8). In addition, it points out that Ullom never consented to removal, and argues that the removal statute "does not contain any exception that would permit realignment to occur before a determination of whether consent is necessary." <u>Id.</u> at 9-16. These arguments support Grand China's main contention that realignment is improper before assessing diversity jurisdiction on removal. These arguments, however, contradict cases decided both in the Fourth Circuit and this district.[4]

The case on which Grand China principally relies, <u>Andalusia Enterprises, Inc. v. Evanston Insurance Co.</u>, 487 F. Supp. 2d 1290

---

[4] For instance, "parties that are aligned in interest with the plaintiff are not required to join or consent to the removal." <u>Herbalife Intern., Inc. v. St. Paul Fire & Marine Ins. Co.</u>, No. 5:05cv41, 2006 WL 839515 (N.D.W. Va. Mar. 30, 2006) (not reported) (citing <u>Smilgin v. N.Y. Life Ins. Co.</u>, 854 F. Supp. 464 (S.D. Tex. 1994)).

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 6]**
**AND GRANTING MOTION TO REALIGN [DKT. NO. 10]**

(N.D. Ala. 2007), was decided by the Northern District of Alabama. In <u>Andalusia</u>, the plaintiffs (both citizens of Alabama) sought a declaratory judgment in state court against their non-Alabama insurance companies and another Alabama citizen ("Lane"), who was the tort claimant in an underlying state action. <u>Id.</u> at 1292-93. The district court concluded that Lane had been properly joined as a defendant pursuant to Alabama's Declaratory Judgment Act, despite the fact that the plaintiffs were seeking no relief from him. <u>Id.</u> The defendant insurance companies moved to realign the parties after removal, but the district court rejected that argument, finding that the notice of removal contained no hint that realignment was being sought.[5] <u>Id.</u> at 1295.

In so doing, the court reasoned that it "must decline jurisdiction when no jurisdictional basis is affirmatively shown in the removal papers"; regarding Lane's necessary joinder, moreover, it noted that the plain language of § 1441(b) allows removal "only if none of the parties in interest *properly joined and served as defendants* is a citizen of the State in which such action is brought." <u>Id.</u> Finally, the court "expressed reservations about

---

[5] The present case is distinguishable from <u>Andalusia</u> in that the notice of removal did contain a request for realignment.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 6]**
**AND GRANTING MOTION TO REALIGN [DKT. NO. 10]**

reshuffling the lineup as an avenue to removal jurisdiction," and did not view the interests of the plaintiffs and Lane as necessarily aligned. Id. at 1297 ("[Lane] may only be angling for a favorable settlement of the contract claims against him . . . or he may strategically decide that [the plaintiffs] have deep enough pockets for him.").[6]

According to Grand China, Andalusia is part of an "increasing trend," borne out of respect for the limited nature of removal jurisdiction, to avoid using realignment to confer diversity jurisdiction where it would otherwise be lacking (Dkt. No. 7 at 11). In this Court's view, however, that "increasing trend" is more accurately characterized as "an ongoing debate among federal courts." Interlachen Props., LLC v. State Auto Ins. Co., 136 F.

_____

[6] This case was later relied upon in Wakefield v. Crinnian, 44 F. Supp. 3d 1195 (N.D. Ala. 2014), where the court also was hesitant to overstep its bounds by realigning parties to create diversity jurisdiction. However, in light of the Eleventh Circuit's holding in City of Vestavia Hills v. General Fidelity Insurance Co., 676 F.3d 1310 (11th Cir. 2012), it is not apparent that Andalusia can bear the weight placed upon it by the plaintiffs, even as persuasive authority. In City of Vestavia Hills, the court affirmed a district court's realignment of a removed action at the defendant's request, partially in light of the fact that "realignment would have been available to [the plaintiff] if it had sought to bring the action in federal court in the first instance." Id. at 1314.

Supp. 3d 1061 (D. Minn. 2015). "[T]here is authority supporting both the proposition that realignment may be used to satisfy diversity jurisdiction in removed actions and the proposition that realignment is not appropriate . . . when diversity was not present when the action was removed." Hunstman Corp. v. Int'l Risk Ins. Co., No. 08-1542, 2008 WL 4453170, at *6 (S.D. Tex. Sept. 26, 2008).

Grant China is correct that some courts have held that fraudulent joinder is the only avenue by which a removing party can establish diversity jurisdiction; that is, a district court may not realign parties prior to determining whether it has jurisdiction.[7] The reasoning in those cases, however, is grounded in the fact that "[i]f a defendant can remove, on diversity grounds, a case properly filed in state court without-at the same time-shouldering (what the case law describes as) the heavy burden of showing fraudulent

---

[7] See, e.g., Roblez v. Ramos, No. 01-366, 2001 WL 896942 (N.D. Tex. Aug. 1, 2001) (rejecting the defendant's request for realignment in the absence of fraudulent joinder and noting that fraudulent joinder is the only method by which a defendant can overrule the plaintiff's "mostly unlimited" right to choose his forum); Schwartz v. Liberty Mut. Ins. Co., No. 012049, 2001 WL 1622209 (E.D. Pa. Dec. 18, 2001) (noting that "the proper test when the plaintiff sues non-diverse defendants is fraudulent joinder," not realignment).

joinder," the balance set by the removal statute will be upset. Roblez, 2001 WL 896942, at *3.

Other courts have held to the contrary. For instance, in Interlachen, State Auto undertook the same course of action as it has here - removing and requesting realignment of the parties to achieve diversity. Much like the plaintiff in Andalusia, the plaintiff argued that the court could reach the question of realignment only if it found that a party had been fraudulently joined. Interlachen, 136 F. Supp. 3d at 1067-68. After surveying the disagreement among courts on this issue, the district court determined that it was not improper to realign parties before addressing fraudulent joinder and remand. Id. at 1071 (collecting cases).[8]

---

[8] The Third, Sixth, and Eleventh Circuits are in agreement with this approach. City of Vestavia Hills v. Gen. Fidelity Ins. Co., 676 F.3d 1310, 1314 (11th Cir. 2012) ("[T]he district court did not err in realigning Cameron as a plaintiff and in refusing to remand this matter to state court."); Cleveland Housing Renewal Project v. Deutsche Bank Trust Co., 621 F.3d 554 (6th Cir. 2010) ("[W]e hold that the district court properly realigned the City as a plaintiff and properly held there is complete diversity between the parties for the purposes of subject matter jurisdiction."); In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litigation, 15 F.3d 1230, 1241 (3d Cir. 1994) ("[W]here party designations have jurisdictional consequences under the relevant federal jurisdiction statute . . . or their related removal provisions, the principle of 'alignment' obliges the court to

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 6]**
**AND GRANTING MOTION TO REALIGN [DKT. NO. 10]**

District courts around the country, thus, approach this issue in a way that is far from uniform, and the trend, at least in the district courts of the Fourth Circuit, is to permit the use of realignment prior to determining if diversity jurisdiction exists. In <u>Lott v. Scottsdale Insurance Co.</u>, a case from the Eastern District of Virginia, for example, the plaintiffs sought a declaration that the defendant insured was covered by the defendant insurer. 811 F. Supp. 2d 1220 (E.D. Va. 2011). The court noted that "settled authority in this circuit and elsewhere" is that a defendant may remove a nondiverse case and seek realignment in order to confer diversity jurisdiction on the district court. <u>Id.</u> at 1223. In support, it cited a number of cases where courts had realigned parties after removal to determine whether diversity jurisdiction existed. <u>Id.</u> n.4 (collecting cases).

In <u>Lott</u>, the district court also noted that, in <u>General Technology Applications, Inc. v. Exro Ltda.</u>, 388 F.3d 114, 120-21 (4th Cir. 2004), the Fourth Circuit had considered and rejected various party alignments before deciding that the case should be

───────────────

penetrate the nominal party alignment and to consider the parties' actual adversity of interest for purposes of determining whether there is a statutory basis for jurisdiction.").

remanded to state court for lack of diversity jurisdiction. 811 F. Supp. 2d at 1223 n.4. Ultimately, the court retained jurisdiction after realigning the parties, reasoning that the defendant insured's interest was most closely aligned with the plaintiff's interest to obtain a declaration that the insurer has a duty to defend and indemnify the insured, who may not otherwise have sufficient funds to cover a judgment. Id. at 1224.

In this district, in Slusarek v. John Riley Co., LLC, Judge Stamp considered a question similar to the one presented here. No. 5:13cv148, 2014 WL 3824036 (N.D.W. Va. Aug. 4, 2014). There, the plaintiff tort claimant had filed a declaratory action in the Circuit Court of Brook County, West Virginia, seeking a declaration that the alleged tortfeasor was a covered insured under a policy issued to the tortfeasor's employer by State Auto. State Auto had removed the case and sought to realign the alleged tortfeasor as a plaintiff because of his similar interest in the coverage question. Id. at *1. Judge Stamp considered the question of realignment before determining whether jurisdiction existed, and agreed that, at least for purposes of declaratory relief on the coverage question, the tortfeasor's interests were more closely aligned with those of the plaintiff. Id. at *2; see also Herbalife Intern.,

15

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 6]**
**AND GRANTING MOTION TO REALIGN [DKT. NO. 10]**

Inc., 2006 WL 839515 (citing Glenmede Trust Co. v. Dow Chemical Co., 384 F. Supp. 423, 427 (E.D. Pa. 1974)) (unreported decision stating that "[w]hen determining whether diversity exists in a civil action removed from state court, the district court has discretion to realign the parties according to their real interests"); Oh. Cas. Ins. Co. v. RLI Ins. Co., No. 1:04cv483, 2005 WL 2574150 (M.D.N.C. Oct. 12, 2005) (concluding that the proper joinder of a defendant under the North Carolina Declaratory Judgment Act did not preclude realignment before assessing jurisdiction under § 1441(b)).

This Court also has previously suggested that such an approach may be appropriate. In Ryan Environmental, Inc. v. Hess Oil Co., Inc., after finding no fraudulent joinder, it remanded the case, but only after determining that, under the facts presented, realignment of the non-diverse forum defendant would be improper. 718 F. Supp. 2d 719 (N.D.W. Va. 2010) (noting that, in addition to assessing nominal parties, fraudulent joinder, and misjoinder, the court can realign parties to determine if diversity exists).

Grand China's contention that realignment in this case is inconsistent with the forum defendant rule is incorrect. That rule states only that "[a] civil action otherwise removable solely on

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 6]**
**AND GRANTING MOTION TO REALIGN [DKT. NO. 10]**

the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Section 1441(a) provides removal jurisdiction over any action "of which the district courts of the United States have original jurisdiction." Id. § 1441(a). If the Court may realign the parties before assessing diversity under § 1441(a), it makes little sense to impose a mechanical restriction to that practice based on § 1441(b)(2).

Indeed, "[t]he underlying purpose of diversity of citizenship legislation . . . is to provide a separate forum for out-of-state citizens against the prejudices of local courts and local juries by making available to them the benefits and safeguards of the federal courts." S. Rep. No. 85-1830 (1958), as reprinted in 1958 U.S.C.C.A.N. 3099, 3102. Section 1441(b)(2) is consistent with this policy; if a defendant does not require the protections of a federal forum against an unfriendly state court, then he need not seek them.

In the case at bar, however, State Auto has sought such a forum, relying on the argument that Ullom should not be considered

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 6]**
**AND GRANTING MOTION TO REALIGN [DKT. NO. 10]**

a defendant. If State Auto, a non-resident, is the only party "defending" this suit against the interests of two residents, and the residents' interests are aligned, § 1441(b)(2) should not bar State Auto from exercising its privilege to remove, regardless of whether West Virginia law permits Ullom to be joined as a defendant. See Lott, 811 F. Supp. 2d 1220 (realigning parties where § 1441(b)(2) would have prevented removal absent realignment); Slusarik, No. 5:13cv148, 2014 WL 3824036 (same). Indeed, to hold otherwise would permit state legislatures to craft laws that limit federal jurisdiction.

**B.**

When determining whether to realign parties, a court may consider two possible tests. These tests, the "substantial controversy" test and the "principal purpose" test, are both drawn from the decision of the Supreme Court of the United States in Indianapolis v. Chase National Bank, 314 U.S. 63 (1941). In U.S. Fidelity & Guaranty Co. v. A&S Manufacturing Co. Inc., the Fourth Circuit adopted the "principal purpose" test. 48 F.3d 131 (4th Cir. 1995) (realigning parties so that insurers and insured were on opposite sides); see also Builders Mut. Ins. Co. v. Dragas Management Corp., 497 Fed. App'x 313 (4th Cir. 2012) (same). In

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO REMAND [DKT. NO. 6]
AND GRANTING MOTION TO REALIGN [DKT. NO. 10]

fact, the Fourth Circuit expressly rejected the "substantial controversy" test, finding it irreconcilable with most of the opinion in <u>Chase National Bank</u>.[9]

In <u>U.S. Fidelity</u>, our circuit court observed that the "principal purpose" test is comprised of the following two steps:

> First, the court must determine the primary issue in the controversy. Next, the court should align the parties according to their positions with respect to the primary issue. If the alignment differs from that in the complaint, the court must determine whether complete diversity continues to exist.

---

[9] Grand China argues that the Court should nonetheless apply the "substantial controversy" test because <u>U.S. Fidelity</u> did not distinguish between realignment in cases originally filed in state court and those originally filed in federal court (Dkt. No. 7 at 17-19). It points out that, in <u>U.S. Fidelity</u>, the realignment resulted in the dismissal of the case for lack of diversity, which is consistent with the desire to limit the federal courts' jurisdiction over removed cases. <u>Id.</u> at 18.

Given the Fourth Circuit's criticism of the substantial controversy test in <u>U.S. Fidelity</u>, however, this argument is unconvincing. According to the court there, "[t]he substantial controversy test allows parties to easily manipulate diversity jurisdiction," thus allowing "diversity jurisdiction in a broad range of cases, limited only by the creative pleading of the plaintiff," while "[t]he principal purpose standard . . . allows parties to engage a federal forum in a narrower range of situations." <u>U.S. Fidelity</u>, 48 F.3d at 133. Although it may operate to confer jurisdiction in cases such as this case, the Fourth Circuit has determined that the "principal purpose" test will properly limit the Court's jurisdiction as a whole. Notably, this Court previously applied the "principal purpose" test in <u>Ryan Envtl., Inc.</u>, 718 F. Supp. 2d at 727 (granting motion to remand).

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO REMAND [DKT. NO. 6]
AND GRANTING MOTION TO REALIGN [DKT. NO. 10]

Id. at 133. "The determination of the 'primary and controlling matter in dispute' . . . is to be determined by plaintiff's principal purpose in filing the suit." Palisades, 552 F.3d at 337. Typically, the interests of the insured and the tort claimant are aligned when seeking a declaratory judgment regarding coverage. See Am. Cas. Co. of Reading, Pa. v. Howard, 173 F.2d 924, 926 (4th Cir. 1949). This principle has long been followed by the district courts in this circuit. See, e.g., Lott, 811 F. Supp. 2d 1220 (collecting cases); Slusarek, No. 5:13cv148, 2014 WL 3824036.

Here, Grand China argues that realignment is not proper under the "principal purpose" test because Ullom's interests are not necessarily aligned with its own (Dkt. No. 7 at 19-21). It suggests that, ultimately, it may not need insurance coverage in order to pay a judgment, or that Ullom, perhaps, may not care about coverage but simply wish to punish Grand China by making it pay.[10] Id. at 20-21. These arguments are disingenuous given the representations of Ullom's counsel during oral argument, and, for that matter, Ullom's

---

[10]   In support, the plaintiffs cite authority from other jurisdictions. See Agrella v. Great Am. Ins. Co., No. 99-c-5309, 1999 WL 1101319 (N.D. Ill. Nov. 29, 1999) (declining to realign the claimants with the insureds in a declaratory judgment action absent "some showing that [the insureds] were judgment-proof").

answer to the complaint (Dkt. No. 15), that, in fact, coverage was appropriate. Even absent such representations, however, the Court is unconvinced by Grand China's argument that Ullom's interests do not align with its own.

As the cases discussed above note, the interest of insured parties typically aligns most closely with declaratory plaintiffs seeking a coverage determination regarding a defendant insurer. Here, plainly Grand China's "principal purpose in filing the suit" is to obtain a declaration that it is covered under the Subject Policy. It seeks no relief from Ullom, whose monetary interests only stand to benefit from such a declaration. Therefore, realigning Ullom with the plaintiffs because their interests are aligned is reasonable and appropriate.

### III. Abstention

Grand China further argues that, if the Court finds that realignment is proper, it should exercise its discretion and remand the case to state court under the doctrine of abstention (Dkt. No. 7 at 21-23). This argument is unpersuasive.

Under the federal Declaratory Judgment Act, district courts have discretion to decide whether to hear declaratory judgment actions. 28 U.S.C. § 2201. Courts should ask two questions when

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 6]**
**AND GRANTING MOTION TO REALIGN [DKT. NO. 10]**

deciding how to exercise that discretion: "(1) whether the judgment will 'serve a useful purpose in clarifying the legal relations in issue'; or (2) whether the judgment will 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" White v. Nat'l Union Fire Ins. Co., 913 F.2d 165, 168 (4th Cir. 1990).

Federalism, efficiency, and comity should also inform a district court's decision when related state court proceedings are pending that "involve[] the same parties and present[] opportunity for ventilation of the same state law issues." Penn-America Ins. Co. v. Coffey, 368 F.3d 409, 412 (4th Cir. 2004). In Coffey, when determining "whether to proceed with a federal declaratory judgment action when a parallel state action is pending," the Fourth Circuit focused on four factors:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum shopping.

Id.

22

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 6]**
**AND GRANTING MOTION TO REALIGN [DKT. NO. 10]**

Grand China argues that courts in West Virginia have a strong interest in addressing insurance coverage issues (Dkt. No. 7 at 23). They first hypothesize that, if this action is remanded, it will be consolidated with the underlying state claim because similar factual issues exist there, and contend this counsels against the Court becoming entangled with the state court by hearing "overlapping issues of fact." <u>Id.</u> Grand China further contends that State Auto is clearly engaged in procedural fencing by trying to have the declaratory action heard in federal court. <u>Id.</u>

It is well established that a federal court may properly exercise its discretion to issue a declaratory judgment when it is apparent that, by doing so, the court will terminate a controversy such as the one here concerning whether Grand China is covered under the Subject Policy, and whether State Auto has a duty to defend Grand China. <u>See</u> <u>White</u>, 913 F.2d at 168. Notably, Ullom also will be impacted by such a declaration, given that knowledge about whether insurance is available to pay any judgment surely will inform his trial strategy. <u>Id.</u>

In addition, the factors in <u>Nautilus Insurance Co. v. Winchester Homes, Inc.</u> counsel against abstention based on the

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 6]**
**AND GRANTING MOTION TO REALIGN [DKT. NO. 10]**

state proceedings in the underlying complaint. 15 F.3d 371, 377 (4th Cir. 1994).[11] First, the mere fact that West Virginia insurance law applies does not provide a "reason for declining to exercise federal jurisdiction." Id. at 378. The issues of insurance law raised in this case are not "difficult, complex, or unsettled," as required for other types of abstention. See id. at 378.

Second, because State Auto is not a party to the state action, questions related to policy coverage will not be addressed in the underlying action. It thus is not apparent that retaining jurisdiction will be any less efficient or will cause entanglement because of "overlapping issues of fact or law." See Slusarek, 2014 WL 3824036, *4. "[T]he efficiency concern is not present when 'the contractual coverage issue will not be decided by the state . . . case.'" Coffey, 368 F.3d at 414.

---

[11] After the Supreme Court's decision in Wilton v. Seven Falls Co., 515 U.S. 277 (1995), "the factors articulated" in Nautilus "which guide the district court's exercise of discretion in a declaratory judgment action remain applicable." Minn. Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout & Kraus, LLP, 355 Fed. App'x 698, 699 n.1 (4th Cir. 2009).

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 6]**
**AND GRANTING MOTION TO REALIGN [DKT. NO. 10]**

Moreover, this Court's coverage determination under West Virginia insurance law will not address factual questions.[12] The Court can consider whether the Subject Policy requires State Auto to defend and cover Grand China against the allegations in the underlying complaint based solely on the language of the policy.

Finally, procedural fencing is not in play here. Although State Auto has sought a federal forum, as is its right under § 1441, this action was removed from state court rather than filed as a parallel action in a "race for res judicata." Nautilus, 15 F.3d at 377. Thus, should the Court retain jurisdiction, "the federal court proceeding [would] not [be] duplicative; the state court is

---

[12] "[I]ncluded in the consideration of whether [an] insurer has a duty to defend is whether the allegations in the complaint . . . are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance polic[y]." Syl. Pt. 3, Tackett v. Am. Motorists Ins. Co., 584 S.E.2d 158 (W. Va. 2003). "[A]n insurer has a duty to defend an action against its insured only if the claim stated in the underlying complaint could, without amendment, impose liability for risks the policy covers." State Auto. Mut. Ins. Co. v. Alpha Eng'q Serv., Inc., 542 S.E.2d 876, 879 (W. Va. 2000) (referred to as the "four corners" rule in W. Va. Fire & Cas. Co. v. Stanley, 602 S.E.2d 483 (W. Va. 2004)). "Determination of the proper coverage of an insurance contract where the facts are not in dispute is a question of law." Syl. Pt. 4, Moore v. CNA Ins. Co., 599 S.E.2d 709 (W. Va. 2004). "[I]f part of the claims against an insured fall within the coverage of a liability insurance policy and part do not, the insurer must defend all of the claims." State ex rel. Nationwide Mut. Ins. Co. v. Wilson, 778 S.E.2d 677 (W. Va. 2015).

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 6]**
**AND GRANTING MOTION TO REALIGN [DKT. NO. 10]**

addressing only the tort issues and is not addressing insurance coverage issues." <u>White</u>, 913 F.2d at 168.

### CONCLUSION

For the reasons stated on the record during the scheduling conference, and as discussed above, the Court **DENIES** the plaintiffs' motion to remand (Dkt. No. 6), and **GRANTS** State Auto's motion to realign Ullom as a plaintiff (Dkt. No. 10). Given these jurisdictional rulings, the Court, for good cause, **BIFURCATES** the parties' dispute regarding insurance coverage from the plaintiff's bad faith claims in this case and schedules the following briefing deadlines:

- November 8, 2016:   Filing of Dispositive Motions
- January 6, 2017:   Response to Dispositive Motions
- January 20, 2017:   Reply to Dispositive Motions

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: October 17, 2016.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE