IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

GRAND CHINA BUFFETT & GRILL, INC.;
QI FENG CHEN; and SCOTT ULLOM,

Plaintiffs,

v.                              //    CIVIL ACTION NO. 1:16CV159
                                      (Judge Keeley)

STATE AUTO PROPERTY & CASUALTY
COMPANY,

Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE**

Plaintiffs Qi Feng Chen ("Chen") and Grand China Buffet & Grill, Inc. ("Grand China"), filed a complaint in the Circuit Court of Harrison County, West Virginia, on June 17, 2016 (Dkt. No. 1-1), which, in part, sought a declaration that defendant State Auto Property & Casualty Co. ("State Auto") has a duty to defend and indemnify them against a wrongful exclusion action filed in state court by Scott Ullom ("Ullom") on July 21, 2015 ("underlying complaint") (Dkt. No. 1-1 at 23). State Auto removed the case to this Court on July 22, 2016 (Dkt. No. 1). Now pending is State Auto's motion for summary judgment on the coverage issues in the case (Dkt. No. 25). For the reasons that follow, the Court **GRANTS** State Auto's motion.

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE**

**I. BACKGROUND**

**A.    The Underlying Complaint**

On July 21, 2015, Ullom filed the underlying complaint in the Circuit Court of Harrison County, West Virginia, seeking to hold Chen liable in his capacity as "Director, Incorporator, and President" of Grand China for violations of the West Virginia Human Rights Act ("WVHRA"), as well as "all applicable West Virginia Statutes" and "Constitutional Laws" (Dkt. No. 1-1 at 25). The underlying complaint alleges that Ullom has hearing and other physical impairments that require him to use a service dog, prosthetic foot, and, at times, a wheelchair. Id. at 24.

Ullom claims that, on July 23, 2013, he and his friend were refused service[1] at Grand China by an "oriental looking" individual believed to be the manager, Stanley Sun ("Sun"). Id. at 23. Sun allegedly would not allow Ullom to bring his service dog into the restaurant, even after Ullom advised that the dog was not a pet but

---

[1] In the scheduling conference and its order denying the plaintiffs' motion to remand, the Court stated "that Ullom and his friend were evicted from Grand China" (Dkt. No. 24 at 2) (emphasis added). This language was drawn directly from the plaintiffs' complaint and does not reflect the Court's opinion on the coverage implications of the term "evicted," including its plain and ordinary meaning in the context of the State Auto policy at issue.

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE**

provided assistance. Id. at 23-24. The underlying complaint claims that Sun "frantically wave[d] both hands above his head and in front of his face," and yelled "the dog cannot come in, the dog cannot come in." Id. at 23. After exiting Grand China, Ullom dialed 911. The Clarksburg City Police arrived shortly thereafter to investigate the incident, but advised Ullom that Chen was "afraid of what other customers would say about a dog in his restaurant," and that he had the "right to refuse service to anyone." Id. at 24.

The underlying complaint seeks "a significant amount" of damages under the WVHRA, both to accommodate Ullom and to punish Chen and Grand China for their "intentional acts of wrong doing." Id. at 25. It also seeks damages for emotional distress, embarrassment, and humiliation in an amount that will "fairly compensate [Ullom] for the intentional acts of wrong doing." Id.

**B.   Procedural Background**

When Chen placed Grand China's commercial general liability insurance company, State Auto, on notice of the underlying complaint, the carrier at first provided a defense. See id. at 8. After deposing Ullom, however, State Auto decided that he had not incurred a "bodily injury" covered under Grand China's policy ("the

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE**

Subject Policy"), and withdrew any further defense to Grand China and Chen. Id. at 9.

As a result of State Auto's decision to withdraw its defense, Grand China and Chen[2] filed the instant action against State Auto and Ullom in the Circuit Court of Harrison County on June 17, 2016. See id. at 6. The complaint seeks the following declarations: (1) "that the Subject Policy does provide them with bodily injury liability coverage for some or all" of Ullom's claims in the underlying complaint; (2) "that the Subject Policy does provide them with personal and advertising injury liability coverage for some or all" of Ullom's claims in the underlying complaint; and (3) that State Auto's reservation of rights was improperly and untimely issued and that State Auto is barred by waiver and estoppel from avoiding coverage obligations, or alternatively, that the reservation of rights is the sole statement of the basis for coverage avoidance. Id. at 12-14. In addition to the declaratory claims, the complaint seeks damages for breach of contract, common law bad faith, a Hayseeds claim, and violations of the West Virginia Unfair Trade Practices Act. Id. at 15-21.

---

[2] In the remainder of this order, plaintiffs Grand China and Chen will be referred to collectively as "Grand China."

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE**

State Auto removed the case to this Court on July 22, 2016 (Dkt. No. 1 at 2). On July 29, 2016, State Auto answered the complaint, and filed a counterclaim and cross claim for declaratory relief against Grand China and Ullom (Dkt. No. 4). State Auto seeks declarations that Ullom's claims in the underlying complaint are not covered by the Subject Policy, and that it has no duty to defend or indemnify Grand China. Id. at 18.

On August 22, 2016, Grand China moved to remand the case to the Circuit Court of Harrison County based on lack of complete diversity (Dkt. No. 7). State Auto opposed the motion and requested that the Court realign Ullom as a plaintiff to create complete diversity (Dkt. No. 10). At a scheduling conference on September 29, 2016, the Court denied Grand China's motion to remand, granted State Auto's motion to realign Ullom as a plaintiff, bifurcated the case, and scheduled deadlines for dispositive motions on the coverage issues raised in the case. On November 8, 2016, State Auto moved for summary judgment on the coverage issues (Dkt. No. 25). That motion is fully briefed and ripe for review.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S**
**MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**
**AND DISMISSING THIS CASE WITH PREJUDICE**

declarations, stipulations . . . , admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the

## MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
## MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
## AND DISMISSING THIS CASE WITH PREJUDICE

evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

### III. APPLICABLE LAW

"A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits." Volvo Const. Equip. N. Am. v. CLM Equip. Co., Inc., 386 F.3d 581, 599-600 (4th Cir. 2004) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79 (1938)). The Court must therefore apply West Virginia law. See Beckley Mech., Inc. v. Erie Ins. & Cas. Co., 374 F. App'x 381, 383 n.1 (4th Cir. 2010) (unpublished decision) (citing Erie, 304 U.S. 64). In West Virginia, "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syl. Pt. 1, Tennant v. Smallwood, 568 S.E.2d 10 (W. Va. 2002).

Liability insurance policies establish two main duties on the part of the insurer, the duty to defend and the duty to indemnify. See, e.g., Aetna Cas. & Sur. Co. v. Pitrolo, 342 S.E.2d 156, 160 (W. Va. 1986); Donnelly v. Transp. Ins. Co., 589 F.2d 761, 765 (4th Cir. 1978). An insurer's duty to defend is normally triggered when "the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by

7

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE**

the terms of the insurance policy," but "[t]here is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage." Pitrolo, 342 S.E.2d at 160; see also Syl. Pt. 2, Farmers & Mechs. Mut. Ins. Co. of W. Va. v. Cook, 557 S.E.2d 801, 802 (W. Va. 2001). If any of the claims against the insured might trigger coverage, the insurer must defend against all the claims. See Horace Mann Ins. Co. v. Leeber, 376 S.E.2d 581, 584 (W. Va. 1988) (citing Donnelly, 589 F.2d at 765). Nevertheless, the insurer need not provide a defense if the claims are "entirely foreign to the risk insured against." Air Force Ass'n v. Phoenix Ins. Co., 896 F.2d 545 (4th Cir. 1990) (unpublished table decision) (citing Donnelly, 589 F.2d at 765).

The specific wording of an insurance policy determines whether it provides coverage for a particular claim. See Beckley Mech., 374 F. App'x at 383; Cherrington v. Erie Ins. Prop. & Cas. Co., 745 S.E.2d 508, 524 (W. Va. 2013). Indeed, "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 8, Cherrington, 745 S.E.2d 508 (internal quotations and citations omitted). Courts should not endeavor to interpret policy provisions unless they are unclear or ambiguous. Id. Instead, courts must give terms and provisions their meaning in the "plain, ordinary and

## MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
## MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
## AND DISMISSING THIS CASE WITH PREJUDICE

popular sense, not in a strained or philosophical sense." <u>Polan v. Travelers Ins. Co.</u>, 192 S.E.2d 481, 484 (W. Va. 1972); <u>see also</u> Syl. Pt. 9, <u>Cherrington</u>, 745 S.E.2d 508.

A term is ambiguous if it "is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." <u>Allstate Ins. Co. v. Ashley</u>, 37 F.3d 1492, at *2 (4th Cir. 1994) (unpublished table decision) (quoting Syl. Pt. 1, <u>Surbaugh v. Stonewall Cas. Co.</u>, 283 S.E.2d 859, 860 (W. Va. 1981)). Courts should resolve any ambiguity in favor of the insured. <u>See</u> <u>Jenkins v. State Farm Mut. Auto. Ins. Co.</u>, 632 S.E.2d 346, 350 (W. Va. 2006) (quoting <u>Leeber</u>, 376 S.E.2d at 584).

## IV. DISCUSSION

Grand China's complaint seeks a declaration that State Auto is obligated to defend it against Ullom's allegations because the underlying complaint alleges a "bodily injury" or "personal and advertising injury" within the meaning of the Subject Policy.[3]

---

[3] As discussed earlier, Grand China's complaint relied alternatively on the principles of waiver and estoppel to argue that State Auto could not avoid providing coverage (Dkt. No. 1-1 at 13-14). Neither party briefed this issue, however, and during a motion hearing on May 15, 2017, Grand China advised that it no longer intended to pursue the claim.

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE**

## A.    Bodily Injury

Grand China first seeks a declaration that the Subject Policy provides "bodily injury liability coverage for some or all of the claims asserted and losses allegedly sustained" by Ullom in the underlying complaint (Dkt. No. 1-1 at 12). State Auto, however, contends that the underlying complaint does not allege a claim for "bodily injury" as that term is defined in the Subject Policy (Dkt. Nos. 4 at 17; 26 at 9-11).

The Subject Policy provides coverage for "bodily injury" as follows (Dkt. No. 25-2 at 97, 108):

> **SECTION I - COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1.    Insuring Agreement**
>
> > **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.
>
> . . .

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE**

**SECTION V – DEFINITIONS**

**2.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

In West Virginia, it is well-settled that "purely mental or emotional harm that . . . lacks physical manifestation does not fall within a definition of 'bodily injury,' . . . which is limited to 'bodily injury, sickness, or disease.'" <u>Cherrington</u>, 745 S.E.2d at 522 (quoting Syl. Pt. 1, <u>Smith</u>, 542 S.E.2d 827) ("Because there is no indication that Ms. Cherrington's emotional distress has physically manifested itself, we conclude that she has not sustained a 'bodily injury.'"). "'[G]reat embarrassment, consternation, mental pain and anguish, and emotional upset' . . . standing alone, do not constitute 'bodily injury.'" <u>Tackett v. Am. Motorists Ins. Co.</u>, 584 S.E.2d 158, 166 (W. Va. 2003); <u>see also</u> <u>Smith</u>, 542 S.E.2d at 831 (noting that a complaint was "completely devoid of allegations" that physical symptoms occurred).

Here, the Subject Policy defines "bodily injury" as "bodily injury, sickness or disease" (Dkt. No. 25-2 at 108). In light of clearly established West Virginia precedent, Ullom's underlying claims for statutory violations, "emotional distress, embarrassment, [and] humiliation," without more, do not fall within

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE**

this definition. Ullom simply has not alleged any physical manifestation of these "purely mental or emotional harm[s]." Cherrington, 745 S.E.2d at 522. Therefore, coverage for "bodily injury" is not triggered under the Subject Policy, and the Court **GRANTS** State Auto's motion for summary judgment on Grand China's first claim.[4]

**B.    Personal Injury**

Grand China next seeks a declaration that the Subject Policy provides "personal and advertising injury liability coverage for some or all of the claims asserted and losses allegedly sustained" by Ullom in the underlying complaint (Dkt. No. 1-1 at 13). The threshold question prompted by this claim is whether Ullom's allegation that he was refused service and directed to leave Grand China is "reasonably susceptible of an interpretation that the claim may be covered" under the Subject Policy as a "wrongful eviction." Pitrolo, 342 S.E.2d at 160.[5] State Auto argues that,

---

[4] Because Ullom did not allege a covered "bodily injury," the Court need not address State Auto's alternative arguments that the incident does not qualify as an "occurrence," or that Sun's conduct triggers the Subject Policy's exclusion for "expected or intended injury" (Dkt. No. 26 at 10-12).

[5] The parties do not dispute that Ullom need not have alleged a cause of action for "wrongful eviction" to trigger the Subject Policy's coverage, for "wrongful eviction from . . . a room,

MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE

"[b]ecause Ullom was not a tenant and had no possessory interest in

the restaurant," the underlying complaint does not trigger coverage

for "wrongful eviction" (Dkt. No. 28 at 6). Grand China contends

that "eviction" is reasonably susceptible to more than one meaning,

including "to force someone to leave a place," and would encompass

Ullom's allegations (Dkt. No. 27 at 14-16).

The Supreme Court of Appeals of West Virginia ("Supreme Court

of Appeals") has not squarely addressed the scope of the term

"wrongful eviction" in this context. Nonetheless, this Court must

interpret the term as a West Virginia court would. Nautilus Ins.

Co. v. BSA Ltd. Partnership, 602 F. Supp. 2d 641, 652 (D. Md. 2009)

(citing Private Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs.,

Inc., 296 F.3d 308, 312 (4th Cir. 2002)). After due consideration

of the Subject Policy's language, as well as persuasive authority

from other jurisdictions, the Court concludes that the Subject

Policy does not provide personal injury coverage for the

allegations in the underlying complaint.

1.    The Subject Policy and Related Definitions

The Subject Policy provides "personal injury" coverage that

includes the following:

dwelling or premises that a person occupies" (Dkt. No. 27 at 9-14).

MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE

**SECTION I - COVERAGES**
. . .
**COVERAGE B PERSONAL AND ADVERTISING LIABILITY**
**1.   Insuring Agreement**
    **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

. . .

**SECTION V - DEFINITIONS**

**14.**   "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
    **a.**   False arrest, detention or imprisonment;
    **b.**   Malicious prosecution;
    **c.**   The <u>wrongful eviction</u> from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
    **d.**   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    **e.**   Oral or written publication, in any manner, of material that violates a person's right of privacy;
    **f.**   The use of another's advertising idea in your "advertisement"; or

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE**

> **g.** Infringing upon another's copyright, trade
> dress or slogan in your "advertisement".

(Dkt. No. 25-2 at 101, 108) (emphasis added).

Although the Subject Policy does not define "eviction," the term "should be given its plain, ordinary meaning," and dictionary definitions may be instructive in that regard. Syl. Pt. 9, <u>Nat'l Union Fire Ins. Co. of Pittsburgh v. Miller</u>, 724 S.E.2d 343, 352 (W. Va. 2012) (internal citation and quotation omitted). Based on a review of several popular dictionaries, when taken in isolation "eviction" may be assigned both the broad and narrow meanings urged by the parties.

The ordinary meaning of "eviction" includes:

> **1:** the act or process of evicting or the state of being evicted[,] **2a:** the recovery of lands or tenements from another's possession by due course of law . . . [,] **b:** dispossession in virtue of a paramount title[,] **c:** dispossession of a tenant by his landlord . . . .

<u>Webster's Third New International Dictionary</u> 788 (unabridged ed. 2002). "Evict" means:

> **1a:** to recover (property) of or from a person by legal process or by virtue of a superior title[,] **b:** to put out (a person) from property by legal process or by virtue of a paramount right or claim of such right: eject, oust [,] **2:** to force out: expel . . . .

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S**
**MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**
**AND DISMISSING THIS CASE WITH PREJUDICE**

Id. Black's Law Dictionary defines "eviction" as "[t]he act or process of legally dispossessing a person of land or rental property." *Eviction*, Black's Law Dictionary (10th ed. 2014). Its definition of "evict" is likewise narrower than Webster's definition: "1. To expel (a person, esp. a tenant), from real property, usu. by legal process. — Also termed put out. 2. Archaic. To recover (property or title) from a person by legal process." *Evict*, Black's Law Dictionary (10th ed. 2014).

### 2. Persuasive Authority

Grand China urges the Court to find that, "[a]t the very least," "wrongful eviction" has an ambiguous meaning that can reasonably be interpreted to encompass Ullom's claim that he was excluded from or forced out of Grand China (Dkt. No. 27 at 16).[6] A

---

[6] Grand China argues only that the underlying complaint contains an allegation of "wrongful eviction," not "invasion of the right of private occupancy." Indeed, Ullom's claims relate to "public accommodations" (Dkt. No. 1-1 at 24). The cases cited by Grand China interpreting the "right of private occupancy" are thus largely inapposite. See, e.g., Sell v. Nationwide Mut. Ins. Co., 492 Fed. App'x 740 (9th Cir. 2012) (unpublished decision) (reasoning that a "right of private occupation" does not necessarily require "physical possession" simply by nature of the limitation requiring the location at issue to be one "that a person occupies"); New Castle Cty. v. Nat'l Union Fire Ins. Co., 243 F.3d 744 (3d Cir. 2001) (reasoning that "invasion of the right of private occupancy," "[a] single phrase, which insurance companies have consistently refused to define, and that has generated literally hundreds of lawsuits, with widely varying results,

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE**

number of jurisdictions have endorsed this reasoning. For instance, in <u>Insurance Co. of North America v. Forrest City Country Club</u>, the insured country club purchased a policy that included coverage for "wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies." 819 S.W.2d 296, 297 (Ark. App. 1991). After the country club refused to allow an African American high school student to play a tennis match on its premises, the student filed suit alleging that the club had violated her rights. <u>Id.</u> The insurer denied coverage, interpreting "eviction" narrowly to require a landlord-tenant relationship. <u>Id.</u> at 298. The Arkansas appellate court ruled otherwise, finding the term to be ambiguous because it also reasonably could be construed to include the more popular usage of "force out or eject." <u>Id.</u>

Likewise, in a more recent decision, the District of Idaho found coverage where the underlying claimant had no possessory interest in real property. <u>Harn v. Scottsdale Ins. Co.</u>, 1:12-cv-00633-REB, 2014 WL 4702235 (D. Idaho Sept. 22, 2014). In <u>Harn</u>, a woman who had been paralyzed after being hit by a drunk driver volunteered for Mothers Against Drunk Driving in order to

---

cannot, under our application of commonsense, be termed unambiguous"); <u>Drought v. Nawrocki</u>, 444 N.W.2d 65 (Wisc. Ct. App. 1989) (unpublished disposition).

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE**

demonstrate the serious consequences of driving under the influence. Id. at *1. While she was volunteering at the Western Idaho State Fair, the woman allegedly was told to leave because she was "too graphic and other customers [were] complaining." Id. When suit followed, the fair organizer sought coverage from its insurer based on a "personal injury" definition that included the same "wrongful eviction" clause at issue in this case. The insurer maintained that the coverage did not apply absent a landlord-tenant relationship. Id. at *6.

After surveying other cases, the court reasoned that such "wrongful eviction" provisions had been interpreted to apply both narrowly, to "an individual's possessory interest in real property," and broadly, to "the removal of a person who has an understood right to be in a place from which she is ultimately removed." Id. at *11. Finding the language "susceptible to more than one reasonable construction, and therefore . . . ambiguous," the court declared that the insurer was obligated to provide coverage. Id. at *12.[7]

---

[7] For another example, see International Insurance Co. v. Rollprint Packaging Products, Inc., 728 N.E.2d 680 (Ill. App. Ct. 2000) (finding that "eviction" could reasonably be interpreted to apply when an employee was fired and physically removed from an office that he "occupied," even though the employee did not have a

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE**

State Auto relies on decisions where courts have denied coverage after considering the same policy language. For instance, in <u>Westfield Insurance Group v. J.P.'s Wharf, Ltd.</u>, the insured restaurant was the subject of allegations that it had "engaged in racial discrimination" by "refus[ing] to serve certain patrons and order[ing] them to leave." 859 A.2d 74, 75 (Del. 2004). At issue in the related declaratory action was language identical to the "wrongful eviction" language in the Subject Policy. <u>Id.</u> While acknowledging that some jurisdictions have found this language to be ambiguous, the Supreme Court of Delaware nonetheless concluded "that [the insurer's] 'wrongful eviction' clause plainly requires that the claim involve a possessory interest in property." <u>Id.</u> at 76. It went on to quote with approval the following reasoning from <u>Zelda v. Northland Insurance Co.</u>, 66 Cal. Rptr. 2d 356 (1997):

> [A]n insurance policy, like any other contract, must be
> construed in its entirety, with each clause lending
> meaning to the other. The proposal that the policy

---

legal or vested interest in the space). Although Grand China also points to <u>Martin Marietta Corp. v. Insurance Co. of North America</u> for support, contrary to Grand China's position, the court in that case actually reasoned that "'other invasion of the right of private occupancy,' and 'wrongful entry' can apply only to the general class of things to which 'eviction' <u>clearly</u> belongs, that is, to claims relating to an invasion of an interest in real property." 47 Cal. Rptr. 2d 670, 678 (Cal. Ct. App. 1995) (emphasis added).

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE**

---

> definition covers any wrongful "eviction," understood in
> the popular sense, fails to give the phrase "from, a
> room, dwelling or premises that the person occupies" a
> function in the definition. Because an eviction,
> popularly understood, is necessarily from somewhere the
> phrase in question is redundant unless it means something
> other than merely "from somewhere." In this regard, we
> observe that the term "to occupy," in one of its popular
> senses, means "to reside in as an owner or tenant." Thus,
> the only reasonable explanation for the additional phrase
> is to clarify that the wrongfulness of the ejection must
> consist in, or attach to, an invasion of the right of
> occupation.

Id. at 364; see also STK Enterprises, Inc. v. Crusader Ins. Co., 14

P.3d 638 (Or. 2000) ("A 'wrongful eviction' within the context of

plaintiff's policy connotes an improper ouster from a possessory

interest in property."); Am. Hardware Ins. Grp. v. West One

Automotive Grp., Inc., 2 P.3d 413 (Or. Ct. App. 2000).

Federal courts sitting in diversity have reached the same

conclusion where a patron has been excluded from a business. In

Gatlin v. Delux Entertainment, LLC, the insured nightclub allegedly

"refused to allow plaintiffs to enter the nightclub because of

their race." No. 09-C-0961, 2010 WL 1904984, at *4 (E.D. Wisc. May

10, 2010). Applying Wisconsin law, the district court reasoned

that, in order to be wrongfully evicted, the plaintiffs must have

had "a legal right to occupy" the nightclub:

> In the present case, plaintiffs do not allege that they
> had a legal right to occupy DBB. Rather, DDB is a

20

> nightclub, and plaintiffs could have been denied entry
> for any number of permissible reasons. The fact that
> plaintiffs allege that they were excluded for
> impermissible reasons does not mean that they had a legal
> right to occupy the premises.

Id. at *4 (citing Westfield, 859 A.2d 74; STK Enters., Inc., 14

P.3d 638; Zelda, 66 Cal. Rptr. 2d 356); see also Century Surety Co.

v. Seductions, LLC, 609 F. Supp. 2d 1273 (S.D. Fla. 2009) ("[T]he

complaint alleges that Mr. Arana, a business invitee of the insured

at the time of the incident, was forcefully removed from the club.

Nothing in the Complaint suggests that Mr. Arana even temporarily

had a possessory interest in the premises.").

### 3. Application to West Virginia Precedent

Obviously, courts disagree sharply about whether the term

"wrongful eviction" is unambiguous in its scope. Under West

Virginia law, this split of authority should undoubtedly be taken

into consideration. Indeed, the Supreme Court of Appeals has noted

that "[a] provision in an insurance policy may be deemed to be

ambiguous if courts in other jurisdictions have interpreted the

provision in different ways." Murray v. State Farm Fire & Cas. Co.,

509 S.E.2d 1, 9 n.5 (W. Va. 1998).

But such differing interpretations do not establish that the

language at issue necessarily is ambiguous if a term's ordinary

MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE

meaning is otherwise clear. Mylan Laboratories, Inc. v. Am. Motorists Ins. Co., 700 S.E.2d 518, 529 (W. Va. 2010).[8] Nor does the fact that the parties disagree on a term's meaning render it ambiguous. Syl. Pt. 4, Blake v. State Farm Mut. Auto. Ins. Co., 685 S.E.2d 895 (W. Va. 2009). Instead, the Court must "construe all parts of the [policy] together" and "avoid ambiguities and not torture the language to create them." Id. at 900-01 (quoting Payne v. Weston, 466 S.E.2d 161, 166 (W. Va. 1995)).

In West Virginia, a term may be ambiguous if it has a number of possible meanings, and the policy provides no narrowing definition. Bowyer v. Hi-Lad, Inc., 609 S.E.2d 634, 651 (W. Va. 2004). For instance, in Bowyer, a hotel employee sued his employer for using hidden microphones to illegally conduct oral surveillance of its employees. The hotel sought coverage and a defense from its commercial general liability insurer, claiming that the employee's allegations were covered personal injuries. Id. at 641. The hotel argued that the allegations fell within coverage for "[o]ral or written publication of material that violates a person's right to

---

[8] Other jurisdictions that find "wrongful eviction" to be ambiguous somewhat blithely conclude that multiple meanings and judicial interpretations of the term compel such a finding. See, e.g., Harn, 1:12-cv-00633-REB, 2014 WL 4702235, at *11.

privacy." The insurer contended that this provision required publication to a third party, which, in Bowyer's case, had not occurred. Id. at 650. The Supreme Court of Appeals agreed with the insured, reasoning that the policy did not contain a definition of "publication" narrowly requiring that intercepted communications be transmitted to a third party in order to trigger coverage. Id. at 651.

Here, however, unlike the policy in Bowyer, the Subject Policy provides the clarifying language necessary to avoid ambiguity. Not every allegation of "eviction" is a covered personal injury; rather, the Subject Policy provides coverage only for "wrongful eviction from . . . a room, dwelling or premises that a person occupies" (Dkt. No. 25-2 at 108) (emphasis added). Thus, although if considered in isolation, "eviction" may carry a number of possible meanings, the plain language of the Subject Policy "clearly signal[s] the requirement that [Ullom] be wrongly deprived of occupation." Zelda, 66 Cal. Rptr. 2d at 364. "[T]he only reasonable explanation" for the Subject Policy's requirement that the eviction be from a place that a person occupies "is to clarify that the wrongfulness of the ejection must consist in, or attach to, an invasion of the right of occupation." Westfield, 859 A.2d at

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE**

77 (quoting <u>Zelda</u>, 66 Cal. Rptr. 2d at 364); <u>cf.</u> <u>Mylan Laboratories</u>, 700 S.E.2d at 528 (summarizing the same "wrongful eviction" language at issue here as "wrongful eviction from, entry into, or invasion of the right of occupancy of <u>one's property</u>" (emphasis added)).[9]

Ullom's underlying complaint does not allege any possessory interest in Grand China that gave him a right to occupy the restaurant. He has alleged only that Grand China wrongfully denied him the right to be served with certain accommodations required by West Virginia law, namely the presence of his service dog. <u>Accord Gatlin</u>, No. 09-C-0961, 2010 WL 1904984, at *4. Thus, Ullom's allegation is not reasonably susceptible to an interpretation that is covered by the Subject Policy's provision for "wrongful eviction." The Court therefore **GRANTS** State Auto's motion for

---

[9] That the term "occupy" may be subject to varying definitions does not render the clause ambiguous. <u>Webster's Third New International Dictionary</u> 1561 (unabridged ed. 2002). If the Subject Policy's occupation requirement did not implicate a possessory interest, the clarifying language would be superfluous. <u>Accord Westfield</u>, 859 A.2d at 77 (quoting <u>Zelda</u>, 66 Cal. Rptr. 2d at 364) ("Because an eviction, popularly understood, is necessarily from <u>somewhere</u>, the phrase in question is redundant unless it means something other than merely 'from somewhere.'").

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]
AND DISMISSING THIS CASE WITH PREJUDICE**

summary judgment on Grand China's second claim. See Pitrolo, 342 S.E.2d at 160.[10]

### V. CONCLUSION

For the reasons discussed, the Court:

1)   **GRANTS** State Auto's motion for summary judgment on the coverage issues (Dkt. No. 25);

2)   **DECLARES** that the allegations in the underlying complaint do not trigger the Subject Policy's coverage for "bodily injury" or "personal injury";

3)   **DECLARES** that State Auto has no duty to defend or indemnify Grand China and Chen on the allegations in the underlying complaint;

4)   **DISMISSES AS MOOT** Grand China's bifurcated bad faith claims; and

5)   **DISMISSES** this case **WITH PREJUDICE**.

It is so **ORDERED**.

---

[10] In light of this conclusion, the Court need not reach the parties' dispute concerning the Subject Policy's exclusion for "knowing violations of right of another" (Dkt. Nos. 27 at 18-21; 28 at 10-11).

**MEMORANDUM OPINION AND ORDER GRANTING STATE AUTO'S**
**MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**
**AND DISMISSING THIS CASE WITH PREJUDICE**

The Court **DIRECTS** the Clerk of Court to transmit copies of this Order to counsel of record and to enter a separate judgment order.

DATED: May 16, 2017.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE